MEADE (BALFOUR'S LESSEE v.). See Case No. 808.

## Case No. 9,371.

### MEADE et al. v. BEALE et al.

[Taney, 339.] [1]

Circuit Court, D. Maryland. Nov. Term, 1850.

RELIGIOUS SOCIETIES—BEQUEST TO — INCORPORATION — VALIDITY — STATE DECISIONS — WHEN ADOPTED—IN EQUITY—REMEDY—RIGHT.

1. A citizen of Maryland, by his will, dated the 6th of March 1836, bequeathed "to the Education Society of Virginia. for the benefit of the theological students at the Protestant Episcopal Theological Seminary of Virginia, near Alexandria. District of Columbia, one thousand dollars. the interest only to be annually expended." The object of the bequest was an unincorporated and voluntary association of individuals to take in succession. On a bill filed to enforce this bequest, *held*: that the case must be governed by those of Dashiell v. Attorney-General [5 Har. & J. 392, 6 Har. & J. 1], and consequently. the bequest was void.

[Cited in McDonogh v. Murdoch, 15 How. (56 U. S.) 398.]

[Approved in State v. Warren, 28 Md. 353.]

2. It does not follow that. because such a bequest would be maintained in England independently of the statute of 43 Eliz. c. 4, it will also be maintained in Maryland.

[Approved in State v. Warren, 28 Md. 353.]

3. The case of Vidal v. Girard College [2 How. (43 U. S.) 194] does not affect this case, as the decision of that case was founded on the common law of Pennsylvania.

4. This case must be decided on the doctrines of the Maryland law. as recognised and established by judicial decisions; and the two cases of

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

Dashiell v. Attorney-General [supra] are conclusive against the validity of the bequest in question.

5. The circuit courts of the United States administer the laws of the states in which they sit, unless those laws are in conflict with the constitution of the United States, or its treaties, or the acts of congress.

6. These courts regard the decisions of the highest judicial tribunals of the state, when based upon the laws of the particular state, as conclusive evidence of the law affecting the right or claim in dispute.

[Cited in McDonogh v. Murdoch, 15 How. (56 U. S.) 398.]

7. In cases depending upon the usages of commerce, and the general principles of commercial law, where the state court does not decide the case upon any particular law of the state, or established local usage, but upon the general principles of commercial law, if it falls into error, that erroneous decision is not regarded as conclusive evidence of the commercial law of the state; and will not be followed by the supreme court.

8. In regard to equitable rights, the power of the courts of chancery of the United States is, under the constitution, to be regulated by the law of the English chancery.

9. But this rule applies to the remedy, not to the right. It is the form of the remedy for which the constitution provides; and if a complainant has no right, the circuit court sitting as a court of chancery has nothing to remedy in any form of proceeding.

This bill was filed against the defendants [Beale and Latimer], as executors of Philip J. Ford, deceased, late a citizen of Maryland, by William Meade, Edward McGuire, John Hooff, Philip Williams, and John Johns, citizens of Virginia, on behalf of themselves, and all others the members of the Society for the Education of Pious Young Men for the Ministry of the Protestant Episcopal Church; said society having its place of business in Virginia, and being there situated, and all the members thereof being either citizens of that state or of other of the United States than Maryland.

The bill stated that, on the 6th of March, 1836, the said Philip J. Ford made and published his last will and testament in writing, whereby, amongst other things, he gave to the Society for the Education of Pious Young Men for the Ministry of the Protestant Episcopal Church, by the name of the Education Society of Virginia, for the benefit of the theological students at the theological seminary of Virginia, near Alexandria, District of Columbia, one thousand dollars, the interest only to be expended. That the testator having departed this life leaving said will unrevoked, the same was duly proved in the orphans' court of Charles county, Maryland, and the execution thereof assumed by the defendants. That the assets received by the executors were large, and amply sufficient to liquidate the whole of the said legacy in due course of administration. That the said Society for the Education of Pious Young Men for the Ministry of the Protestant Episcopal Church, whereof the complainants were members, and on behalf of which they sued, was commonly known and designated by the name of the Education Society of Virginia, and was the same society so designated by the testator in his said will; and that the place of the annual meeting of said society was now, and always had been, at the theological seminary of the Protestant Episcopal Church in the diocese of Virginia, situated in Fairfax county, in said state. That the said society was composed of about two hundred members, who resided in various states of the Union, remote from each other. That, according to the constitution of said society, the affairs of the same were committed to the management of a board of directors, which consisted of the president, four vice-presidents, the secretary, the treasurer and thirty managers, who were all appointed annually, at their annual meeting at the said theological seminary. That the complainants were, at the death of the testator, and had been, ever since, members of said society and of its board of directors. That it was the duty of said board of directors, among other things, to determine on the propriety of accepting and approving of the candidates for the aid of the society aforesaid, in the prosecution of their education for the ministry aforesaid, selected and recommended by the standing committee, composed of four members of said board of directors, and upon the approval of the persons so recommended, it was the duty of said standing committee to appropriate and furnish the funds and assistance from the treasury of the society aforesaid, to the said beneficiaries. That said beneficiaries were bound to prosecute their studies at said seminary, under the direction of its professors, unless such condition were dispensed with by the standing committee; and they were provided with board and other necessaries by said seminary, which was provided for and supported, so far as the board of the students there is concerned, by said society. That said seminary was in full existence as a theological school; and the said society, through its board of directors, had been for many years before the death of the testator, and had continued ever since, in full existence and organization, and prosecuting successfully the objects of its formation, precisely in the same manner as at the time of the publication of the testator's will and at the time of his death. Prayer for discovery and relief.

The will of the testator, so far as it related to this bequest, was as follows: "I give and bequeath to the Education Society of Virginia, for the benefit of the theological students at the Protestant Episcopal Theological Seminary of Virginia, near Alexandria, District of Columbia, one thousand dollars, the interest only to be annually expended."

To this bill, the defendants demurred generally, and the case was submitted, upon written arguments, upon the demurrer.

J. M. Campbell, in support of the demurrer, contended (I) That the legacy was void, be-

ing in violation of the 34th article of the bill of rights of Maryland. (2) That the legatee not being incorporated, the legacy was void for want of a competent person to take. 2 Story, Comm. § 1147; 3 Pet. [28 U. S.] Append. 497. The statute of Elizabeth (43 Eliz. c. 4), it is true, supplies the defect of want of a charter, but without that statute, in England, and where it is not in force in this country the legacy is void. The statute is not in force in Virginia, and such a legacy is void there. Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs, 4 Wheat. [17 U. S.] 1; 3 Pet. [28 U. S.] Append. 481. In Pennsylvania, the statute of Elizabeth is not in force, as to its mode of proceeding, but it is, as to the principles involved ([Vidal v. Girard's Ex'rs] 2 How. 192), and the supreme court of the United States, in the case of Girard's Will, in 2 How. [supra], while upholding the legacy there given, under the law of that state, refers to and adopts the principle of the case [Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs] in 1 Wheat. [supra], as applicable, where the statute of Elizabeth is not in force. In Maryland, the statute of charitable uses (43 Elizabeth) is not in force (5 Har. & J. 398); and on page 401 of that volume the very case of a devise to persons in succession, not incorporated, is put by the court.

R. J. Brent, for complainant. The doctrine of charities and conveyances to charitable uses has been so fully discussed in the opinion of the supreme court, in Vidal v. Girard's Ex'rs, 2 How. [43 U. S.] 194, that we can only refer to that decision as finally settling the law on this subject, and conclusively settling that such devises could be enforced in equity, independently of the statute of Elizabeth, thus virtually overruling the contrary decision made by our court of appeals, in Dashiell v. Attorney-General, 5 Har. & J. 400, which was based on the mistaken notion that chancery had no jurisdiction previously to that statute. The question, therefore, recurs whether the circuit court will not, in such a case, rather follow the federal decisions than the state decision? If so, the sole remaining question is, whether this legacy, as claimed, is not a charity? which will clearly appear by reference to the bill.

Henry Winter Davis, on the same side. The case is succinctly and accurately stated by the defendant's counsel; and in the two points insisted on, the merits of the case are fairly met. (1) The law of charitable bequests is not dependent on the statute of 43 Elizabeth, but is a part of the common law, prior to and more comprehensive than that statute. (2) The bequest of Ford's will is such, as within the principles of the law of charitable bequests, is valid and enforcible by bill in equity. (3) The bill of rights of Maryland does not affect the matter.

I. The elements of perfect trust are, a trustee, a subject, and an object or beneficiary competent to take. The want of a trustee will always be supplied by equity, and is not suggested or relied on here. The subject here exists in the legacy. The object or beneficiary is the party stated in the bill. It is an unincorporated, voluntary association, and it is on this that the objection of its incompetency rests. The purpose of the trust—the education of youths for the ministry—is directly within the immediate scope of the organization of the society, and we suppose is conceded to be a charitable purpose, which would be sustained and effectuated, if the body designated to take the fund be competent to take. In all cases there must be a beneficiary sufficiently certain and definite, or any gift or bequest will be void. That certainty varies with the subject-matter of the gift or bequest, and the objects to which it is directed. It may either be a natural person, or a corporate person, or a more indefinite body, such as a religious congregation, a voluntary association, or the public—either of the whole commonwealth, or limited portions of it. The first two are the ordinary objects of gifts and bequests. The third class is recognized as competent to take property—not generally, but only for specified purposes. The individual can take for all purposes, generally; the body corporate only for purposes within the scope of its charter. When the bequest or gift is for certain public or charitable purposes, an enlarged policy has relaxed the rigid rules which define the certainty of a competent donee, where individuals are concerned, and indefinite gifts and dedications are recognised and enforced. One class of such cases is, that in which dedications to the public, or to particular societies, have been protected; such was the case of Mayor, etc., of New Orleans v. U. S., 10 Pet. [35 U. S.] 662, where the proprietors of the soil had laid out a town, and on the plat had designated a portion as "the quay." and the court held it a valid dedication to the public; and remarked that, without such dedications, an advanced state of society could not exist; and that the right might exist in the public at large, or in a definite part of it. without the intervention of a corporation (page 713). Similar principles are reiterated in the cases of Cincinnati v. White's Lessees, 6 Pet. [31 U. S.] 431; Barclay v. Howell's Lessee, 6 Pet. [31 U. S.] 499; and Beatty v. Kurtz, 2 Pet. [27 U. S.] 566; in which latter case, a piece of ground marked on the plan of Georgetown "for the Lutheran church," an unincorporated society taking in succession, was protected from violation, as a place of burial for the dead, validly dedicated to the public, and to pious uses. Such gifts as the above, to an individual, would have been void: to the public, the citizens of the town, the religious congregation—for those particular purposes, they were valid; and the persons intended to enjoy the gift were vague and uncertain, shifting, unascertained, unincorporated, and not protected by the intervention of trustees. The cases are thus far directly in point; they suffice to remove all à priori presumptions

against the existence of other cases; embraced by their principles, where the rules relative to gifts or bequests to individuals for private purposes do not operate to avoid the gift. They lay the foundation for the principle, that for public purposes relative to the religion, the commerce, the municipal conveniences, the education of the people, the laws of limitation and conveyancing are not the same which govern the disposition of private property between private persons; but that an indefinite public may have rights which courts will protect. It is this principle which lies at the foundation, and is the origin of charitable bequests of an indefinite nature, whereby transfers of property—void if between private persons for private purposes—are taken under the protection of the courts, when applied to public or charitable uses. Within it, gifts or bequests for the establishment of schools or colleges, for the education of ministers or orphans, for the support of ministers, for the benefit of dissenting congregations, unincorporated, for the erection of light-houses, bridges, &c., are protected. The fact that such gifts are protected in England, and in certain states of this Union is conceded; but it is denied that they are so protected on the above principle, but only by virtue of the statute of charitable uses. 43 Eliz. c. 4.

We had supposed this principle at rest before the courts of the United States, since the case of Vidal v. Girard's Ex'rs, 2 How. [43 U. S.] 127; but it would seem that the counsel for the defendants entertains a different view of that case. It is true, that it was held, in conformity with the case of Zimmerman v. Anders, 6 Watts & S. 218, that the conservative provisions of the statute of Elizabeth were in force in Pennsylvania; but it is equally true, that that statute has been held not to be in force in Pennsylvania, and also that, independently of it, the more extensive range of charitable uses which chancery supported before that statute, and beyond it, were held to exist in that state; and that, after an elaborate examination of the cases, the supreme court solemnly affirmed the doctrine of Sugden in 1 Dru. & War. 258, that courts of equity have, independently of the statute of Elizabeth, an inherent jurisdiction in cases of charity; that cases of charity, in courts of equity in England, were valid prior to the statute of Elizabeth, and that from the more recent cases, and the result of recent investigations, such was the case at the common law prior to the statute; and therefore, without reference to the cases from the Pennsylvania reports, those doctrines would be part of the common law of Pennsylvania. [Vidal v. Girard's Ex'rs] 2 How. [43 U. S.] 197, 198. Indeed, it is plain, such must have been the case, for St. 43 Eliz. only created a new tribunal for the enforcement of acknowledged rights; its language creates no new right, nor makes one valid which before was void; and if its modes of proceeding were not in force, nothing remained to be in force; for the rights it protected were old rights, which fraud had invaded, but not nullified in the eye of the law. The courts of Pennsylvania were, therefore very accurately discriminating when they held the statute not in force, but that the principles chancery had adopted in applying its provisions, obtained in Pennsylvania, not by force of the statute, but as part of the common law. Witman v. Lex, 17 Serg. & R. 88–90.

Upon such and much more powerful arguments. Sugden, in the case of Incorporated Soc. v. Richards, 1 Dru. & War. 294, in Ireland, where the statute of Elizabeth is no more in force than it is in Maryland and Virginia, and where, consequently, the bequest must either be void or valid by some other law, held the jurisdiction of chancery to decree and enforce indefinite charities; and that the statute only introduced a new and special, but not exclusive mode of enforcing trusts and uses previously valid; and Lord Redesdale in Plunkett v. Mayor, etc., of Dublin, 1 Bligh [N. S.] 312, 346, 347, held that the statute created only a new jurisdiction, by analogy to certain old writs—a jurisdiction ancillary to the court of chancery; and similar doctrines were maintained in Zane's Will Case, Brightly, N. P. 346, till finally, on the fullest investigation, and on the faith of new lights making plain a path over which their predecessors had groped in darkness, and not unfrequently stumbled, the supreme court proclaimed the same doctrine in so convincing a form, as to silence controversy; in a scientific point of view, however, doubts may still invest its practical application in particular cases. If this be so, it seems to be immaterial that the court of appeals of Maryland, following in the footsteps of Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs, 4 Wheat. [17 U. S.] 1, have said the statute of Elizabeth is not in force in Maryland. We concede it, but ask relief of the courts of equity of the United States, administering the general equity jurisprudence of the common law, as expounded by the supreme court. If the question were whether St. 43 Eliz. is in force in Maryland, the case of Dashiell v. Attorney-General [supra] might well be relied on as a conclusive adjudication upon the local statute law of the state. So far as it decides that, we do not impeach it; we say only, that it is error in supposing that the whole law of charitable bequests of an indefinite character sprang from, and fell with, that statute, shall not bind the courts of the United States in deciding a question, under the common law, of general equity jurisprudence, and our protest rests on the reiterated decisions of the supreme court. That such was the only point decided in 5 Har. & J., appears from the very opening of the opinion on p. 398, where it is held, that the peculiar law of charities originated in St. 43 Eliz., and that, independently of it, equity could not, in its ordinary

jurisdiction, sustain a bequest which, if not a charity, would, on general principles, be void. Then the vagueness of the particular bequest is discussed, and finally, it is shown that St. 43 Eliz. is not in force in Maryland. Now we concede, as a point of local law, that 43 Eliz. is not in force in Maryland; we controvert the opinion that the courts of equity had no general jurisidiction over indefinite charitable bequests; and as a point of general equity jurisprudence, the circuit court is not bound by the court of appeals of Maryland.

The question then, relates, not to a local statute, nor to a rule of law of title to real property, nor even to the meaning and effect and construction of the language of the will; but simply to the powers of a court of equity to enforce what is confessed to have been the intention of the testator. Neither is it a question as to whether the powers of the Maryland court of chancery are adequate to the enforcement, for they may be entirely inadequate, or such courts may not exist at all in Maryland, as they do not in Louisiana, or Massachusetts or Pennsylvania; but can the United States circuit court enforce this trust, no local statute declaring it void in itself; and if it fall at all, it being for want of competent power to enforce it. Now it is obvious that the powers of the circuit court cannot depend either upon the equity powers conferred by the state upon its courts of equity, or upon the decision of those courts upon their powers. And though they may decide, and profess to rest their decision upon general equity law, yet that would not bind the circuit court's decision as to its powers on the same question. For example, suppose it should decide that a legacy to the family of A., was too vague: or that a trust declared in a will was void, if no trustee were named; or that a court of equity had no power to substitute a surety to the right of the creditor secured: or that equity had no power to relieve against a mistake of fact; nobody would suppose the circuit court bound. On the contrary, the supreme court has declared that the judiciary act confers the same chancery powers on all, and gives the same rules of decision in all the states, whether courts of equity exist there or not; U. S. v. Howland, 4 Wheat. [17 U. S.] 108; and by parity of reasoning, whatever limit, whether by legislation or judicial construction, may have been set to their powers. And in Robinson v. Campbell, 3 Wheat. [16 U. S.] 212, it was the opinion of the court, that their equity jurisdiction and powers were not confined to the modes and extent of administering relief possessed by the local tribunals; for in some states no courts of equity exist, and in others equitable rights are considered nullities, and no relief given for their violation; so that the United States courts would not have the same powers in all the states; and therefore, they must look to the common source of our law (England) for the powers of courts of common law and equity. In Livingston v. Story, 9 Pet.

[34 U. S.] 633, 654–657, the above cases are affirmed, and the principle reiterated, that the courts of the United States may recognise and enforce equitable rights and remedies, even where they are not recognised in the laws or local tribunals of the state.

In the case of Swift v. Tyson, 16 Pet. [41 U. S.] 1, 18, 19, the supreme court decided that the decisions of the local tribunals on contracts and instruments of a commercial nature (not on local statutes or land titles) did not furnish positive rules or conclusive authority to bind the judgment of the supreme court; that their interpretation and effect must be sought, not in the decisions of local tribunals, but in the general principles of commercial law, and this in a case upon a New York acceptance. So also in the case of Carpenter v. Providence Wash. Ins. Co., Id. 495, 511, 512, the court said, the questions were of the general commercial law depending on a construction of the contract of insurance, not local in its character, and that on such a question, the decisions of the state courts could not conclude them, however much they might regret the arrival at results varying from those of the state courts; similar principles are affirmed in the case of Gaines v. Chew, 2 How. [43 U. S.] 650. In the case of Swift v. Tyson [supra], the court draws the distinction between laws and mere judicial decisions, often re-examined, reversed, and qualified by the same courts; mere evidence of the laws, and so liable to be rebutted by further and better evidence; of which no better illustration can be imagined than the law of charitable uses—first repudiated as no part of equity jurisprudence in Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs [4 Wheat. (17 U. S.) 1], because supposed to have originated from St. 43 Eliz., then on recent investigations, re-adopted and re-instated in its place as an integral portion of that jurisprudence. And the court further distinguishes decisions on statutes, and relative to rights and things having a permanent locality, and other things immovable and intra-territorial in their nature and character (by which they confess themselves bound) from decisions on the general doctrines of the common law, whether administered in a legal or equitable forum; of the latter character is Dashiell v. Attorney-General, 5 Har. & J. 400. And in the case of Flagg v. Mann [Case No. 4,847], Story has expressly held that the courts of the United States are not bound by the decisions of a state court on a matter of general equity jurisprudence.

That this bequest is not too vague under the law of charitable uses, and that it is charitable in its nature, and may be executed by the courts of equity under their general powers, we refer to Witman v. Lex, 17 Serg. & R. 88; West v. Knight, Cas. Ch. 134; Simon v. Barber, 5 Russ. 112; Hayter v. Trego. Id. 113; Widmore v. Woodroffe, Amb. 639; Wellbeloved v. Jones. 1 Sim. & S. 40; Society for Propagation of the Gospel v. Attorney-General, 3 Russ. 142; Foley v. Wontner, 2 Jac. &

W. 245; Milligan v. Mitchell, 3 Mylne & C. 72, 84; 1 Dow, 1; 2 Bligh, 529; 3 Mer. 353, 418. Indeed, the case of the Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs, 4 Wheat. [17 U. S.] 1, would of itself be sufficient on this point, for the complainants there failed only because the court thought the law of charitable uses arose from and depended on St. 43 Eliz., but it is plain that the court considered the bequest perfectly valid under the law of charitable uses, and would have sustained it had they considered that law a part of general equity jurisprudence at common law. Upon what part of the case in [Vidal v. Girard's Ex'rs] 2 How. [(43 U. S.) 125], the counsel for the defendant bases his statement, that the supreme court refers to and adopts the principle of the case [Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs] in 4 Wheat. [supra], as applicable, where the statute of Elizabeth is not in force, we are entirely unable to surmise. In reply to the authority of 4 Wheat. the court distinguish it from the one at bar, 1st, as arising in Virginia, where 43 Eliz. was repealed; and 2d, as being the case of an unincorporated association, an answer quite sufficient to withdraw the case at bar from the influence of 4 Wheat. But the court does not stop with that distinction between the cases, but proceeded to show the law to be other than it had been decided to be in 4 Wheat. and to adopt and affirm the law of charitable uses as a part of the common law of equity jurisprudence. And it was because the bequests of the will were within this general law that the court supported them. That such bequests have frequently been held valid in the courts of the states, independently of the statute of Elizabeth, and under the common law, and that these bequests in manner and form fall within those which have been sustained as sufficiently definite, will appear from the following cases: Attorney-General v. Dashiell [supra], decided in 1822, following close upon, and undoubtedly the result of Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs [supra], in 1819; since then we have Witman v. Lex, 17. Serg. & R. 88, in 1827, and Burr's Ex'rs v. Smith, 7 Vt. 241, in which case, among many charitable legacies to persons not competent to take except under the law of charitable uses, all held valid, was one to the treasurer for the time being of the American Home Missionary Society, formed in New York in 1826. Notwithstanding a misnomer and error as to the organization of the society, the bequest was sustained, and the whole question of the relation of the law of charitable uses to the statute of Elizabeth was investigated with the greatest learning. The same is the case in Wright v. Trustees of M. E. Church, 1 Hoff., ch. 204–238. One bequest was to the Methodist society that met in the meeting house in John street; the corporate style was, the Trustees of the Corporation of the Methodist Episcopal Church of the City of New York; and the corporation consisted of eleven congregations, having separate organizations, but not constituting separate parts of the corporate body. This was nevertheless held good, and that the money could be well paid, either to the clerk of this congregation, or to the general secretary or treasurer of the corporation. There was another bequest in the same will to the "Yearly Meeting of Friends in New York." It was a voluntary association, whose members resided in New York, Vermont, Massachusetts and Upper Canada, and yet the bequest was sustained. The opinion is one of the most elaborate on the subject of the independence of the law of charitable uses of the statute of Elizabeth, and its common law origin (pages 239–265). A similar decision was made in Dutch Church v. Mott, 7 Paige, 77. The case in 1 Hoff. Ch. was decided in 1839; that in 7 Paige, in 1838; that in 7 Vt. in 1835. The case of Moore's Heirs v. Moore's Devisees, 4 Dana, 354, decided in 1836, is fully up to the same point. We likewise refer to the case of Wellbeloved v. Jones, 1 Sim. & S. 40, for a case illustrating the circumstances under which the court refer it to a master to settle the safe and proper mode of disposing of the fund, where voluntary associations are interested, in certain circumstances.

II. The bill of rights is further evoked to avoid the legacy. Its 34th article is aimed, not at charitable donations generally, or even exclusively, but embraces all legacies, and only such legacies of goods and chattels as are given to the persons or the bodies designated. It avoids legacies for one particular class of charitable objects; but from this negative on one class of charitable donations, which would not have been forbidden, had they not previously been allowable and legal, arises a strong inference of the general validity of donations to general and indefinite, and unincorporated objects and purposes. Why avoid a legacy to a minister as such, to be taken in succession, if they were not previously valid? And how were such valid, save under the law of charitable donations? Does not the avoidance of all gifts to religious congregations, except land for a church, &c., admit their previous capacity, as such congregations, to take such gifts generally? of which general capacity the above exception still remains. But this only in passing to the construction of the article. The portion relied on is, we presume, that which avoids "any devise of goods or chattels for the support, use or benefit of any minister, public teacher or preacher of the gospel, or for any religious sect, order or denomination." Certainly, this legacy does not fall within the language descriptive of either of the two classes of proscribed objects. It is not to a minister, public teacher or preacher of the gospel. It is to the Education Society, not composed of clerical persons according to its constitution, but of all classes and denominations who conform to its constitution; the legacy is for the benefit of students at the Theological Seminary of Vir-

ginia. But students of theology are neither ministers, public teachers nor preachers of the gospel; they may become such, and so may any lawyer or scholar; and they may never become such, though they may study the science of theology. The bequest, in its very terms, excludes any benefit to any minister, teacher or preacher, and confers it solely on persons not clerical, studying a particular science at a particular institution of learning. On the principle which alone can bring this legacy under those terms, every legacy to any institution of learning, for the foundation of scholarships, wherein theology shall be taught, must be void; that is, any bequest for the benefit of any university, in the German, or English, or indeed, the American sense of that phrase. There is no abnegation whatever upon the students ever to become ministers.

Neither does this legacy seem to fall within the terms, for the benefit, use or support of any religious sect, order or denomination. Certainly, in no strict sense of the terms, is the Education Society, as described in the bill, either a religious sect, order or denomination; it is an education society, not a religious society; it may, or may not be composed of religious persons; its objects are not religious worship, but the education of certain persons in one branch of moral science. An incidental advantage may result to one religious denomination, but if the gift be not for the use of that denomination, as such, it seems not to be within the intent of the article; it may derive an incidental advantage from the establishment of any institution of learning where persons might be aided in studying theology; for persons might there be aided who afterwards enter the Protestant Episcopal Church. A bequest to St. John's College might be void on the same ground. The words, religious sect, order or denomination, have a well understood meaning, which will not embrace the Education Society; they mean a number of persons united in a particular organization called a church, for the purposes of common religious worship; but surely a set of gentlemen forming a society for aiding youth in their theological education, could hardly be called a religious sect, order or denomination. Runkel v. Winemiller, 4 Har. & McH. 452. But in fact, whatever may have been the meaning of the article, has it not been virtually repealed and annulled by subsequent legislation? The act of 1798 (chapter 24), incorporating the Vestrymen of the Protestant Episcopal Church, expressly allows them to take bequests of goods and chattels, provided the income do not exceed a certain amount (section 28). The act of 1802 (chapter 111, § 8), confers like power on the trustees of any religious congregation of any denomination, with a proviso against gifts, &c., not to take effect till after death, and limiting the amount to be held by any congregation. This restriction of gifts to take effect after death, was annulled by the act

of 1815 (chapter 222, § 1), and the power to take by will or deed made general and absolute. The act of 1814 (chapter 58), conferred like capacity on the Methodist Baltimore Conference, though its jurisdiction extended beyond the state, into Pennsylvania on one side, and to the Rappahannock, in Virginia, on the other; for the benefit of all which region it is empowered to hold property. These acts reflect a double light on this subject.

1. They show distinctly what was meant by religious sect, order or denomination; merely a congregation or single society, organized for purposes of common worship; not any multitude of persons who might happen to concur in one or more tenets of belief, still less any society, whatever might be the prevailing complexion of the religious opinions of its members, organized, not for the purposes of religious worship and improvement, but for the purpose of scientific instruction in matters of theology generally. This meaning appears from the preamble of the act of 1802. It speaks of petitions from religious societies and of all denominations of Christians, and their holding property in a congregational capacity, &c.

2. It is plain, that the bill of rights is entirely repealed in its principle and substance by these acts. The whole policy of the state is changed; it now sanctions what it before condemned. It forbade all bequests for the benefit of religious sects, and now all bequests for all sects are valid, if not beyond a certain sum. Upon what principle can this bequest be considered void under the article, when if in favor of any sect or denomination, as such, it is in favor of those vested specially with power to take and hold property in Maryland? If the court should think this bequest ought to be confined to the benefit of certain of the Protestant Episcopal congregations of Maryland, it is competent for the court, in directing the execution of the trusts of the will, to limit the application in such manner, and to designate the mode of applying the fund: i. e., that it should be applied to the education of ministers for the church in Maryland, on a scheme to be reported by the master for that purpose.

Should the court not take that view, it may be worth while to consider, if the article extends to bequests to ministers or religious denominations beyond the state of Maryland, as this society is beyond the state. The same reasons would not apply to prohibiting bequests to foreign as to domestic associations; and we know that money bequeathed in England to be laid out in land in a foreign country, for charitable purposes, will be sustained, when if it be to be laid out in England, it would have been void. Whether the analogies of these cases touch the present is submitted, with a simple reference to 2 Story, Eq. Jur. §§ 1184, 1185, etc. If this bequest should be considered such in its character as the bill of rights describes, and so void, if the persons to take were in Maryland, it is not

unfair to argue, that the article only contemplates gifts to such persons, or to such purposes, within the state; but never had any application to such persons, or associations or objects, beyond the state, since the state policy could in no manner be affected by the growth of such associations, or the accumulation of wealth in the hands of ministers beyond the state.

J. M. Campbell, in reply. The defendants' counsel in support of the demurrer in this cause, and in reply to the counsel for the complainants, deems it unnecessary to advert to a large part of their argument, and the bulk of their authorities, because, in his view, the question is disposed of by the cases already cited by him, in the supreme court, and in the state of Maryland. It is conceded by the complainants' counsel, that the statute is not in force in Maryland, and that under the decisions of the court of appeals in Maryland, the legacy now sued for would not be recoverable there, or at any rate such is the fair conclusion from what they say. Now, do the courts of the United States, in deciding questions of charities and charitable uses, cut loose from the law settled in the states where those courts sit? The case of Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs, 4 Wheat. [17 U. S.], has already been cited by us. Of that case, the supreme court, in Vidal v. Girard's Ex'rs, 2 How. [43 U. S.] 192, say, it "arose under the law of Virginia, in which state St. 43 Eliz. c. 4, had been expressly and entirely abolished by the legislature, so that no aid whatsoever could be derived from its provisions to support the bequest." No objection is taken to the decision, upon the ground that the law of Virginia had nothing to do with the question, but on the contrary, the assumption is, that the court in Hart's Case decided rightly as far as that ground went, though possibly they might have erred on the ground that there was no jurisdiction of charities independently of the statute.

This view becomes still more clear on an examination of the case of Vidal v. Girard's Ex'rs [supra]. That case having come up from the Pennsylvania circuit, care is taken, on pages 192 and 196 of the opinion of the court, to affirm and repeat with emphasis the fact, that though St. 43 Eliz. is not in force in Pennsylvania, its principles are, "by common usage and universal recognition; and not only these, but the more extensive range of charitable uses which chancery supported before that statute and beyond it." And on page 197, the opinion goes on to state, that "the case is completely closed by the principles and authorities already mentioned, and is that of a valid charity in Pennsylvania." It seems to us that, upon the principles laid down by the complainants' counsel, it was quite unnecessary for the court to have examined at all into the laws of Pennsylvania, and the fact that

it has done so, coupled with its observation as to the different law prevailing in the circuit where Hart's Case was decided, shows that the United States courts, whatever they may do in other cases, do not mean to get up a different law of charitable uses from that recognized by the states in which they sit. Nor would it be proper. Upon general principles of law, commercial or otherwise, in which a state can have no interest different from that of the rest of the world, or Union, the federal courts may decide according to state decisions which break in upon the uniformity of a general system; but they never have so decided, where the effect was to uproot a particular line of policy adopted by the state; and such is the case of the doctrine of charitable uses. If a state sets its face against particular charities, the courts of the United States will never consent to plant them in its borders.

TANEY, Circuit Justice. This case has been submitted on written arguments. The money in question is bequeathed to the Education Society of Virginia, for the benefit of the theological students, at the Protestant Episcopal Theological Seminary of Virginia, near Alexandria, District of Columbia; and the demurrer admits that the complainants represent the society to whom this bequest was intended to be made. The society is not incorporated, and the bequest is to a voluntary association of individuals to take in succession.

The court is of opinion that this case must be governed by the case of Dashiell v. Attorney-General, 5 Har. & J. 392, 6 Har. & J. 1, decided in the Maryland court of appeals; and consequently, that this bequest is void. The principles decided in these two cases were also ruled by the supreme court, in a case arising in Virginia, in which state, as in this, the statute of Elizabeth concerning charitable uses has not been adopted, nor its principles recognized, as a part of the common law of the state. Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs, 4 Wheat. [17 U. S.] 1. The case of Vidal v. Girard's Ex'rs, was decided altogether upon the law of Pennsylvania. 2 How. [43 U. S.] 192.

It is very true, that in the last-mentioned case, the supreme court express the opinion that the courts of chancery in England possessed the power of enforcing charities of this description, before the statute of Elizabeth was passed; in other words, that such a devise was good, and might be enforced in chancery. But assuming this to be correct, and that the court were mistaken in the contrary opinion expressed in the case of Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs [supra], yet it does not follow, that because such a bequest would be maintained in England, it must also be maintained in Maryland. Nor is such the doctrine of the supreme court in the case of the

Girard College; on the contrary, while the court in that case held that such a devise was valid in Pennsylvania, it still recognized as authority the case of Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs [supra], which decided that a similar devise was void in Virginia. The statute of Elizabeth is not in force in either of these states, and the supreme court founded its decision in the last of these cases, upon the common law of the state as recognized in Pennsylvania, by universal usage and judicial decision. Upon the same principle, this case must be decided upon the doctrines of the Maryland law, as recognized and established by judicial decisions; and the two cases in the court of appeals before mentioned are conclusive against the validity of the bequest in question.

The circuit courts of the United States administer the laws of the states in which they sit, unless those laws are in conflict with the constitution of the United States, treaties or acts of congress; and as a general rule, regard the decisions of the highest judicial tribunals of the state as conclusive evidence of the law. We do not speak of matters of practice, or the forms of proceeding; but of decisions upon the right or claim in dispute between the parties, where that right depends upon the laws of the particular state.

The cases of Swift v. Tyson, 16 Pet. [41 U. S.] 1, and Carpenter v. Providence Ins. Co., Id. 511, 512, were cases depending upon the usage of commerce, and the general principles of commercial law. And the supreme court have always said that in cases of that description, where the state court does not decide the case upon any particular law of the state, or established local usage, but upon the general principles of commercial law, if it falls into error, that erroneous decision is not regarded as conclusive evidence of the commercial law of the state, and will not be followed as such by the supreme court. And the reason of this distinction is obvious. The state court does not decide in such cases upon the peculiar laws and institutions of the state. Its decision, therefore, is no evidence that any law has been adopted by the state in conflict with the general principles which regulate commercial contracts throughout' the commercial world.

So too, as relates to the jurisdiction of the circuit court sitting as a court of chancery. It is undoubtedly true, as contended for in the argument of the complainant, in regard to equitable rights, that the power of the courts of chancery of the United States, is, under the constitution, to be regulated by the law of the English chancery; that is to say, the distinction between law and equity as recognized in the jurisprudence of England is to be observed in the courts of the United States, in administering the remedy for an existing right. The rule applies to the remedy and not the right; and it does not follow, that every right given by the English law, and which, at the time the constitution was adopted, might have been enforced in the court of chancery, can also be enforced in a court of the United States; the right must be given by the law of the state, or of the United States. It is the form of remedy for which the constitution provides; and if a complainant has no right, the circuit court, sitting as a court of chancery, has nothing to remedy in any form of proceeding.

In the case before the court, the question is: is the bequest which the complainants claim, a valid one by the laws of Maryland? It is a question which, in its nature, necessarily depends upon the laws of the respective states. Some of the states sanction devises of this description; some do not; and undoubtedly it depends upon every state to determine for itself, to whom and in what form, and by what instrument, any property within its borders may pass by devise or otherwise. The court of appeals in Maryland have decided, that a bequest like this is void by the laws of the state, and passes no right to any one. This court is bound to respect this as the law of the state; and if there is no right vested in the complainants by this bequest, this court cannot create one. There is, therefore, neither an equitable nor legal title upon which the powers of a court of the United States can be called into action, either as a court of equity or of law, in behalf of these complainants.

This is not a proceeding to appoint a trustee to execute a valid trust; nor, indeed, are there any cestuis que trust. This doctrine is fully maintained in the case of Wheeler v. Smith, 9 How. [50 U. S.] 55, which was decided at the last term of the supreme court. The cases of Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs, and Vidal v. Girard's Ex'rs, were in that case recognized as depending upon the laws of the respective states, and not merely upon the doctrines of the English chancery. The bill in this case must, therefore, be dismissed with costs.